# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 05-0061 (ESH)** |
| | ) | |
| **KEVIN POWELL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is defendant Kevin Powell's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (*See* Def.'s Pro Se Motion, ECF No. 65; Supp. to Def.'s Pro Se Mot. (filed by counsel), ECF No. 67.)  Defendant seeks release based on a medical condition that he claims puts him at increased risk of serious complications or death should he contract COVID-19.  The government opposes defendant's motion on multiple grounds.  For the reasons stated herein, defendant's motion will be granted.

## BACKGROUND

Defendant is presently serving a 240-month sentence of imprisonment based on his 2005 conviction for one count of unlawful possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(iii), one count of carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c), and one count of unlawful transport of a firearm in violation of 18 U.S.C. § 922(g)).  (*See* Judgment, Nov. 29, 2005, ECF No. 44.)  At the time of sentencing, defendant's guideline range (without application

of the career offender guideline[1]) would have been 190 to 212 months.  However, the Court was
required to impose a sentence of 240 months due to the applicable statutory mandatory
minimums.[2]  Defendant has served over 15 years in prison, and his projected release date, with
good time credits, is April 14, 2022, less than 2 years away.  (*See*
https://www.bop.gov/inmateloc/, last accessed June 17, 2020.)  Upon release, he is subject to a
four-year term of supervised release.  (*See* Order, Mar. 6, 2008, ECF No. 55.)

Defendant is currently incarcerated at Fairton FCI.  On April 28, 29, and 30, 2020,
defendant submitted handwritten requests to BOP officials (his case and unit managers) asking
for compassionate release due to his vulnerability to COVID-19 and to serve the remainder of his
sentence on home confinement.[3]  The BOP construed these requests solely as requests under the
CARES Act, Pub. L. No. 116-136, 134 Stat 281 (2020), to serve the remainder of defendant's
sentence on home confinement,[4] and it denied relief because under BOP's current policies

---

[1] Under the Sentencing Guidelines, defendant's range as a "career offender" was 360 months to
life.  However, the Court imposed a non-Guideline sentence because it found that "application of
the career offender guideline . . . substantially overstates Powell's criminal history and the nature
of his present offense."  (Mem. Op. at 4, Nov. 28, 2005, ECF No. 43 ("While Powell has now
been convicted of four drug-related felonies, each involved small quantities of drugs and none
involved any claim of violence.").)

[2] In 2005, defendant was subject to a 120-month mandatory minimum for the drug offense, a
180-month mandatory minimum for the § 924(c) conviction and a 60-month consecutive
mandatory minimum for the § 922(g) conviction.  Under the First Step Act of 2018, which made
parts of the Fair Sentencing Act of 2010 retroactive, *see* Pub. L. No. 115-391, 132 Stat 5194,
5222 (2018), defendant is no longer subject to a mandatory minimum for the drug count, but he
is not eligible for a sentence reduction under the First Step Act due to the other two mandatory
minimums.

[3] Copies of defendant's requests were provided to the Probation Office by defendant's case
manager, and the Probation Office provided them to the Court.  The requests are attached hereto
as Appendix A.

[4] Before the CARES Act, BOP could only transfer an inmate to home confinement if the inmate
had 6 months or 10% of their sentence, whichever was less, left to serve.  *See* 18 U.S.C.
3624(c)(2),  The CARES Act gives BOP authority to move prisoners to home confinement at an
earlier point.  CARES Act, § 12003(b)(2) ("HOME CONFINEMENT AUTHORITY.—During

defendant is not eligible for home confinement.  (*See*  Opp. at 3 & attachment B thereto; *see also* Notice of Filing, ECF No. 77.)

Defendant's pending pro se motion for release was docketed on April 30, 2020, and it was supplemented by the Office of the Federal Public Defender on May 5, 2020.  (*See* Mot., ECF No. 65; Supp. Mot., ECF No. 67.)  The government filed a response, opposing relief, on May 13, 2020, and defendant, through counsel, filed a reply on May 21, 2020.  (*See* Opp., ECF No. 70; Reply, ECF No. 72.)

On May 14, 2020, defendant's counsel submitted, on defendant's behalf, a request for compassionate release to the warden at Fairton FCI.  (*See* Reply, Ex. J, ECF 72-1 ("Mr. Powell requests compassionate release (reduction in sentence) under 18 U.S.C. [§] 3582(c)(1)(A) because of his diagnosed health conditions of degenerative peripheral nerve disorder.").)  On June 1, 2020, the warden denied the request.  (*See* Notice of Filing, ECF No. 77.)

## ANALYSIS

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  As amended by the First Step Act of 2018, § 3582(c)(1)(A)(i) provides that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.").

> (i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Prior to the First Step Act, motions for compassionate release could only be brought by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ("Increasing the Use and Transparency of Compassionate Release").  Although a defendant may now move on his own behalf, the statute states that a defendant must first either exhaust all administrative rights to appeal BOP's refusal to bring a motion on defendant's behalf or wait 30 days from the date a request is received by the warden at defendant's facility.  Here, more than 30 days have elapsed since May 14, 2020, the date defendant's request for compassionate release was submitted by his counsel to the warden of FCI, so defendant has satisfied the exhaustion requirement of § 3582(c)(1)(A).  *See, e.g., United States v. Curtis*, No. 03-cr-533, 2020 WL 1935543, at *3 (D.D.C. Apr. 22, 2020).  The Court thus turns to the merits of defendant's motion.

## I.      EXTRAORDINARY AND COMPELLING REASONS

Defendant argues that the existence of the COVID-19 pandemic in conjunction with his degenerative neurological disease and his other personal characteristics constitute "extraordinary and compelling reasons" within the meaning of § 3582(c)(1)(A)(i).  Specifically, he argues that his degenerative peripheral nerve disorder, Charcot-Marie-Tooth ("CMT") disease, in combination with a history of mental illness, his age, race, and gender, constitute extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i) because they increase his risk for severe complications from COVID-19.[5]  Extraordinary and compelling

---

[5] Defendant also argues that the COVID-19 pandemic combined with the prison environment, without regard to his individual circumstances, present an "extraordinary and compelling reason"

reasons for a sentence reduction exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, Application Note 1(A)(ii).  And, the government allows that prisoners with serious physical or medical conditions that put them at increased risk of serious complications or death should they contract COVID-19 fall within the above definition.  (*See* Opp. at 19.)  However, the government disputes whether  defendant's degenerative neurological disease is such a condition.

At the time defendant filed his motion, the CDC identified peripheral nerve disorders as one of several "'[n]eurological and neurologic [] conditions'" that "'may increase the risk of serious COVID-19 for individuals of any age.'"  (Supp. Mot. at 1 n.1 (quoting CDC, *Implementation of Mitigation Strategies for Communities with Local COVID-19 Transmission* (Mar. 13, 2020), at Appendix A, https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf.).)  Thereafter, though, for reasons that are unknown, the CDC removed neurological conditions from that list.  (*See* Opp. at 20-21; Reply at 21.)  The government relies heavily on this change, essentially arguing that the CDC's identification of a condition as high risk is a condition precedent for finding that COVID-19 increases a particular inmate's risk.  But while the CDC's guidance is material, it is not the only source of information about COVID-19.  Especially given the novelty of the COVID-19 virus, the rapidly evolving and everchanging understanding of how it works and who is most at risk, and the serious complications, including death, that can result, it, at best, makes no sense and

---

for a sentence reduction.  As the Court explained in a recent decision, it does not agree that a "generalized risk to the prison population as a whole" is sufficient.  *See United States v. Wheeler*, No. 19-cr-0085, 2020 WL 2801289, at *3 (D.D.C. May 29, 2020).

would be fundamentally unfair, if not contrary to the statute, to slam the compassionate release door on any inmate whose medical condition does not appear on the CDC's list.  At a minimum, the Court understands its responsibility when considering a motion for compassionate release based on extraordinary and compelling circumstances to give full and fair consideration to all of the relevant facts.

In this instance, that consideration leads the Court to conclude that defendant's medical conditions and personal characteristics present extraordinary and compelling reasons warranting a reduction in his sentence.  First, even though the CDC has removed "neurological conditions" from the list of high-risk conditions that appears in one of the documents on its website, the CDC's website also includes data that supports defendant's contention that his neurological disease puts him at higher risk.  Specifically, the CDC's hospitalization data over the past few months shows that a significant percentage of individuals requiring hospitalization due to COVID-19 have underlying neurological conditions.  For example, for the week ending June 6, 2020, , 23.5% of hospitalized individuals had neurologic disease.  *See* https://gis.cdc.gov/grasp/COVIDNet/COVID19_5.html, last accessed June 16, 2020.  Notably, this number is higher than the percentage of hospitalized individuals with chronic lung disease (20.7%) and much higher than the percentage of hospitalized individuals with renal disease (16%), asthma (12.5%), or immune suppression (9.7%), all of which are conditions that the CDC lists as being high risk.  (*See id*.; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.)   In addition, defendant suffers from depression, which can lead to compromised immunity, further increasing defendant's risk.  (*See* Reply at 24; *id*. Ex. L at 3 (Let. of Inst. of Law, Psychiatry, and Public Policy, Univ. of Va.) ("[i]ndividuals suffering from serious mental illness can have compromised immunity and are at risk of severe illness and

death during the coronavirus pandemic."); *id.* Ex. M ¶ 13 (Decl. of Robert M. Sapolsky) ("[M]ental illnesses such as anxiety, depression, and bipolar disorder will impair immune function and heighten vulnerability to viral infection.").)  Finally, treatment options for an individual with Charcot-Marie-Tooth disease who contracts COVID-19 may be limited because of the vast array of mediations that have been identified as "neurotoxic" for persons with CMT. (*See* Supp. Mot. at 31 & n.80.)

Although it is impossible to be certain in this unpredictable environment, the Court finds that defendant has submitted sufficient evidence to substantiate his claim that his degenerative neurological disease and other comorbidities put him at higher risk should he contract COVID-19 while in prison.  Accordingly, he has shown extraordinary and compelling reasons to allow for compassionate release.

## II.   § 3553(a)

The remaining question is whether, after considering the applicable § 3553(a) factors, the Court concludes that a sentence reduction to time served is warranted.  As the Court made clear at the time it imposed sentence, defendant's statutorily-mandated sentence of 20 years far exceeded what the Court would have otherwise imposed based on the applicable § 3553(a) factors, particularly the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed.  Today, these same factors weigh in favor of reducing defendant's sentence to time served.

First, with respect to the "nature and circumstances of the offense," none of the offenses of conviction involved any claim of actual violence and the drug conviction only involved a small quantity of drugs. The same was true of the three prior drug convictions that led to his designation as an Armed Career Criminal.  (*See* Mem. Op. at 4, Nov. 28, 2005, ECF No. 43

("11/28/2005 Mem. Op.") (defendant's prior drug-related felonies all "involved small quantities of drugs and none involved any claim of violence"); *see also* Sent. Tr. at 17-18.)

Defendant's "history and characteristics" also weigh in favor of a sentence reduction. Due to his degenerative neurological condition, combined with having spent over 15 years in prison, defendant's physical and mental health have degenerated to the point where he may not even be able to work upon his release. (*See* Opp., attachment D, at 1, ECF 70-5.) Two more years of incarceration will certainly and unnecessarily exacerbate his current problems.

Moreover, there is no "need" for a sentence any greater than the time defendant has already served – over 15 years. The government argues that additional time is necessary "to protect the public from further crimes of the defendant" because defendant has a high risk of recidivism (Opp. at 22) The Court does not agree. At the time of sentencing in 2005, the Court found that defendant presented a "far lesser risk of recidivism" due to the likely impact of his degenerative neurological disorder on his physical condition after 20 years in prison. (11/28/2005 Mem. Op. at 6.) The government now argues that because BOP has designated defendant as someone with a "high" recidivism risk, the § 3553(a) factors counsel against any sentence reduction. (Opp. at 22 (citing attachment C, at 1 (Inmate Profile), ECF 70-3).) The records provided by the government consist of one line in defendant's Inmate Profile that reads "high risk recidivism." There is no additional information provided, except that the government explains that it is based on defendant's "PATTERN" score. (*See* Opp. at 3.) But using a defendant's PATTERN score in this manner is fraught with problems. (*See* Reply at 27-28 & nn. 30-33 (citing Nadler & Bass Press Release,

https://judiciary.house.gov/news/documentsingle.aspx?DocumentID=2893 (advising Attorney

General Barr that "PATTERN was created for an entirely different purpose than for assessing

whether prisoners should be released during a pandemic" and "urg[ing] BOP

not to use a prisoner's PATTERN score as a consideration for whether they should be released

to home confinement during the COVID-19 pandemic").)  Absent more, and especially given the

Court's finding *15 years ago* , when defendant was 26 years old, that his physical state greatly

diminished any risk of recidivism, the record does not support the government's contention that

defendant, who is now 41, has a high risk of recidivism.

     The government also argues that Court should not release defendant because defendant

"has not established that he would be appreciably less vulnerable to COVID-19 if he were

released" because of the steps BOP as taken to control the spread of COVID-19 and because

defendant  has not proposed a suitable release plan.  (Opp. at 22.)  First, it cannot seriously be

disputed that an individual in prison is less able to control his own surroundings and exposure

than he would be if living in single-family residenc in the community.[6]  (See Supp. Mot. at 25 &

Ex. A thereto; Reply at 30 & n.37 & Ex. N thereto.)  Moreover, experts agree that the "release of

detainees who present a low risk of harm to the community is [] an important mitigation

strategy" because, by shrinking the inmate population, "it allows for greater social distancing,

which reduces the chance of spread if the virus is introduced; it allows easier provision of

preventive measures such as soap for handwashing, cleaning supplies for surfaces, frequent

laundering and showers, etc.; and it helps prevent overloading the work of detention staff such

that they can continue to ensure the safety of detainees."  (*See* Supp. Mot. Ex. C at ¶ 9 (Decl. of

---

[6] According to BOP, as of June 17, 2020, there are 1190 federal inmates and 170 BOP staff
(excluding federal prisons operated by private contractors) who have confirmed positive test
results for COVID-19 nationwide.  *See* https://www.bop.gov/coronavirus/, accessed on June 12,
2020.  An additional 4970 inmates and 502 staff have recovered, but there have also been at least
85 federal inmate deaths and 1 BOP staff member death attributed to COVID-19 disease.  *Id.*

Dr. Marc Stern)); *see also Banks v. Booth*, No. 20-cv-00849, 2020 WL 1914896, at *5 (D.D.C. April 19, 2020) ("Due to the unique posture of jails and prisons, steps taken to reduce the risk of infection among any inmates, such as reducing the inmate population or providing adequate cleaning supplies, would . . . reduce the . . . risk of contracting COVID-19" while in prison."). Finally, and of most concern, in the past few days the total number of active cases of COVID-19 at Fairton FCI has substantially increased, confirming that BOP, despite its efforts, cannot prevent outbreaks within its facilities.[7]   Nonetheless, before the Court can find that release is in both the defendant's and the community's best interest, defendant must have a viable release plan. Unfortunately, that is not yet the case.[8]   Accordingly, the Court will grant defendant's motion for compassionate release and reduce defendant's sentence to time served, to take effect as of the date the Court approves defendant's release plan.

## CONCLUSION

Defendant has already been incarcerated for over 15 years, and he has less than two years left to serve.  Defendant's sentence, which was dictated by mandatory minimums, was excessive to begin with.  To keep him in prison now, where he is at much greater risk of contracting COVID-19 and at increased risk of serious complications due to his underlying medical condition serves no legitimate purpose.  For all of the above reasons, the Court finds that defendant has presented extraordinary and compelling reasons that warrant a sentence reduction to time served.  However, because defendant does not yet have a viable release plan, the Court's order will take effect only after the Court approves defendant's release plan.

---

[7] After having no new cases in the past month, there are now 16 inmates with positive COVID-19 tests and 4 staff.  (*See* https://www.bop.gov/coronavirus/, accessed on June 16, 2020.)

[8] At the Court's request, the Probation Office investigated whether defendant would be able to reside with either his brother or his mother after his release.  For several reason, neither locations is currently a viable option.

Accordingly, it is hereby

**ORDERED** that defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) for

compassionate release is **GRANTED**; and it is further

**ORDERED** that defendant's sentence is reduced to time served, to take effect on the date

the Court approves defendant's release plan; and it is further

**ORDERED** that the Probation Office, with the assistance of defense counsel, shall

propose an acceptable release plan as soon as possible.



ELLEN S. HUVELLE
United States District Judge

Date:  June 18, 2020